**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Derek Lamont Terry,

                Defendant/Movant,

v.

United States of America,

                Respondent.

No. CV-20-00029-TUC-CKJ
No. CR-16-01350-CKJ-EJM-1

**ORDER**

      Before the Court is Defendant Derek Lamont Terry's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (CV 1, CR 358).[1] For the following reasons, Defendant's motion is DENIED.

## BACKGROUND

      Between January 1, 2016, and April 27, 2016, Defendant Derek Lamont Terry met, recruited, and trained "Jane Doe," a juvenile female, to engage in prostitution. (CR 282 at 9). Defendant was aware of Doe's real name and age and posted advertisements for her on backpage.com. *Id.* Once the advertisements were posted, individuals would contact Doe to set up dates where Doe would perform sex acts with the individuals for money. *Id.* Because Defendant was Doe's pimp, Doe would give Defendant the money she earned from her dates. *Id.* On occasion, Doe would also "double date" with Defendant's main

---

[1] Citations to the docket of this case, CV-20-29-TUC-CKJ, are abbreviated as (CV_). Citations to the criminal docket, CR-16-1350-CKJ-EJM, are abbreviated as "(CR __).

prostitute.  *Id.*

When working for Defendant, Doe conducted both "in calls" and "out calls."  *Id.* at 10.  "In calls" were situations where customers would come to a prearranged motel to engage in sex for money.  *Id.*  Defendant rented the motel rooms and hosted "in calls" in Arizona and California.  *Id.*  Defendant also arranged for Doe to perform "out calls," where Doe would travel to individuals to engage in sex for money.  *Id.*  During "out calls" Doe communicated with Defendant via telephone regarding the times, locations, and transportation logistics to and from the dates.  *Id.*

Defendant drove Doe within the state of Arizona and from Arizona to California so that Doe could engage in prostitution.  *Id.*  Defendant also traveled with Doe and his main prostitute from Arizona to California, where he rented a room at the Super 8 Motel in San Bernardino, California, for Doe to use for prostitution.  *Id.*

Additionally, from on or about June 1, 2016, through on or about June 8, 2016, Defendant knowingly transported "S.C.," another underage female, from California to Arizona with the intention of having S.C. engage in prostitution.  *Id.*   In order to travel from California to Arizona, Defendant obtained a rental car in California with the assistance of his then girlfriend.  *Id.*  Defendant then drove S.C. from California to Arizona to engage in prostitution through the posting of internet advertisements on backpage.com.  *Id.*  Defendant also admitted that on or about June 4, 2016, through on or about June 8, 2016, he drove S.C. from Arizona to Texas to engage in prostitution through the posting of internet advertisements on backpage.com.  At all times, Defendant was aware that S.C. was under the age of 18.

Plea Agreement

On August 28, 2017, the Court granted the Government's stipulated motion to transfer the related Phoenix case to Tucson  and consolidate this matter with the Phoenix case to allow Defendant to enter into a combined plea agreement and be sentenced in both cases at the same time.  (CR 277).

On August 31, 2017, Defendant entered into a written plea agreement with the

prosecution, pleading guilty to one count of Sex Trafficking of Children, in violation of 18 U.S.C. § 1591(a), and two counts of Transportation of a Minor with Intent to Engage in Prostitution, in violation of 18 U.S.C. § 2423(a).  (CR 282 at 1-2).  The same day, at Defendant's change of plea hearing, the Magistrate Judge reviewed the plea agreement with Defendant to ensure that Defendant understood the terms and effects of the agreement. (CR 300)  The Magistrate Judge also confirmed that Defendant's plea was voluntary and that Defendant's attorney thoroughly explained the plea agreement to him.  *Id*.  The following colloquy is taken directly from transcripts of the hearing:

> THE COURT: And are you pleading guilty voluntarily and of your own free will?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: And are you pleading guilty because you are guilty of these offenses?
>
> DEFENDANT: Yes, sir.
>
> . . . .
>
> THE COURT: Now I would like to go over your plea agreement with you. You do have a plea Agreement with the government. Before signing your plea agreement, did you review it and Discuss it with [your attorney]?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: And do you understand all the terms and conditions of your plea agreement and are you willing to be bound by those terms and conditions?
>
> DEFENDANT: Yes, sir.

(CR 300 at 5:20-25; 8:14-22).

In addition to ensuring that Defendant was voluntarily entering the plea agreement

- 3 -

and that he understood its terms and effects, the Magistrate Judge then asked whether Defendant understood that the plea agreement contained an appeal waiver.  During this colloquy the following exchange occurred:

> THE COURT:        Okay. And finally, your plea agreement   provides that as long as your sentence is consistent with your plea agreement, meaning somewhere between 168 and 240 months, that you're giving up your right to appeal or challenge in any way your conviction and your sentence. Is that your understanding as well?
>
> DEFENDANT:        Yes, sir.

(CR 300 at 10:6-11).

On February 23, 2018, Defendant appeared for sentencing where the Court again asked Defendant if he knew the terms and effects of his plea agreement; whether his attorney explained the terms of the plea agreement; and whether he was satisfied with his attorney's services.  The following exchange took place:

> THE COURT:        And, [Defendant], sir, have you been satisfied with the services of your attorney in your cases?
>
> DEFENDANT:        Yes, ma'am.
>
> THE COURT:        Has [your attorney] been able to answer any questions that you may have had about your cases?
>
> DEFENDANT:        Yes, ma'am.
>
> THE COURT:        And has he discussed the presentence report which was prepared for both of your cases as well as the recommendation section and the addendum to the report with you?
>
> DEFENDANT:        Yes, ma'am.
>
> THE COURT:        Have you had a chance to look at those documents yourself?
>
> DEFENDANT:        Yes, ma'am.
>
> THE COURT:        All right. You pled guilty to the charges in each of these cases.

- 4 -

> This was back in August with a written plea agreement before the magistrate -- was that before the magistrate judge?
>
> DEF. COUNSEL:     Yes, your Honor, before the [Magistrate Judge].

(CR 355 at 2:21-3:15).

On February 27, 2018, a final judgment and commitment was entered (CR 342), to which Defendant filed a pro se Notice of Appeal the following day.  (CV 1-2 at 8).  On March 1, 2018, Defendant's trial attorney also filed a Notice of Appeal.  (CR 343).

On March 14, 2018, Defendant's trial attorney filed a motion to withdraw as counsel on appeal, stating that he spoke with Defendant about the claims that Defendant was likely raising on appeal, that there was a valid waiver of appeal, and that counsel could no longer ethically continue representing Defendant on appeal due to effect of the waiver. (9th Cir. Doc. 6).[2]  Defendant was subsequently appointed appellate counsel. (9th Cir. Doc. 12).

In his *Anders* brief, appellate counsel explained that the trial court conducted a proper Rule 11 plea colloquy, Defendant knowingly and voluntarily pleaded guilty, Defendant waived all constitutional claims that occurred before the plea, and that the waiver was valid.  (9th Cir. Doc. 15).

On January 15, 2019, the United States Court of Appeals for the Ninth Circuit granted counsel's *Anders* brief, held that Defendant waived his right to appeal his convictions, and concluded that the record contained no arguable issues as to the validity of Defendant's waiver. *See United States v. Terry*, 749 F. App'x 580, 581 (9th Cir. 2019). The court also declined to address Defendant's claims of ineffective assistance of counsel, as direct appeal was not the appropriate mechanism to raise collateral claims challenging an underlying conviction.  *Id*.

## PROCEDURAL HISTORY

On January 17, 2020, Defendant filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (CV 1)  On

---

[2] Citation to the 9th Circuit Docket for case Nos. 18-10072 and 18-10078 are abbreviated as "(9th Cir. Doc. __)".

1    September 3, 2020, the Government filed its Response to Motion Under 28 U.S.C. § 2255

2    to Vacate, Set Aside, or Correct Sentence.  (CV 10).  On November 16, 2020, Defendant

3    filed his Reply to the United States Response Under 28 U.S.C. § 2255 to Vacate, Set Aside,

4    or Correct Sentence.  (CV 11).  This Order follows.

5                **LEGAL STANDARD -- MOTION UNDER 28 U.S.C. § 2255**

6             A federal prisoner may seek relief under 28 U.S.C. § 2255 if: (1) his sentence was

7    imposed in violation of the United States Constitution or the laws of the United States; (2)

8    the sentencing court had no jurisdiction to impose the sentence on the prisoner; (3) the

9    sentence imposed exceeded the maximum sentence authorized, or (4) the sentence is

10   "otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  In the context of a guilty

11   plea, a petitioner must demonstrate the existence of an error of constitutional magnitude

12   that had a substantial and injurious effect or influence on the plea itself.  *Brecht v.*

13   *Abrahamson*, 507 U.S. 619, 637 (1993).  "Where a [movant] has procedurally defaulted a

14   claim by failing to raise it on direct review, the claim may be raised in habeas only if the

15   movant can first demonstrate either cause and actual prejudice, or that he is actually

16   innocent."  *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal citation and

17   quotation marks omitted).  In cases where the underlying guilty plea is found to have been

18   made knowingly and voluntarily, the guilty plea forecloses independent claims, such as

19   constitutional claims, where the issue occurred prior to pleading guilty.  *See Hudson v.*

20   *Moran*, 760 F.2d 1027, 1029-30 (9th Cir. 1985).

21                               **EVIDENTIARY HEARING**

22            Section 2255 requires that the district court grant a petitioner's motion to hold an

23   evidentiary hearing "unless the motion and the files and records of the case conclusively

24   show that the [movant] is entitled to no relief."  28 U.S.C. § 2255(b).  "[A] court may deny

25   a hearing if the [movant]'s allegations, viewed against the record, fail to state a claim for

26   relief or are 'so palpably incredible or patently frivolous as to warrant summary

27   dismissal.'"  *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996), *quoting*

28   *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985).  Where a movant's allegations

contradict statements made in court, "credibility must be assessed." *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989). However, an evidentiary hearing is not required where the issue of credibility can be "conclusively decided on the basis of documentary testimony and evidence in the record." *Id.* In determining whether to hold an evidentiary hearing, courts may expand the record with other documentary evidence, use their own notes and recollections, and incorporate common sense. *Id.; see also United States v. Espinoza*, 866 F.2d 1067, 1070 (9th Cir. 1988); *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988). The Court, therefore, will properly consider the record, what occurred in the criminal cases, and the arguments considered in the briefs.

As discussed *infra*, the Court finds resolution without an evidentiary hearing is appropriate in this case.

## WAIVER OF RIGHT TO FILE 28 U.S.C. § 2255 PETITION

A waiver generally will be enforced if the agreement, by its terms, expressly waives the right and the waiver is knowingly and voluntarily made. *United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000); *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994); *United States v. Vences*, 169 F.3d 611 (9th Cir. 1999) (sentence was not illegal where it was authorized by the judgment of conviction and was not in excess of the statutory penalty). In this case, the plea agreement provided that Terry waived "(1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack . . . that challenges the conviction...including but not limited to . . . any appeal . . . and motions under 28 U.S.C. §§ 2241 and 2255. (CR 282).

However, the Ninth Circuit has left "open the possibility that [a habeas petitioner] might raise [an] ineffective assistance argument on federal habeas procedure, through a § 2255 motion, notwithstanding that [his] appeal waiver covered 'all his waivable statutory rights to file a petition pursuant to 28 U.S.C. § 2255 challenging the length of his sentence.'" *United States v. Jeronimo*, 398 F.3d 1149, 1156 n.4 (9th Cir. 2005), *overruled on other grounds by United States v. Jacobo-Castillo*, 496 F.3d 947, 957 (9th Cir. 2007)

(en banc).  The Ninth Circuit has subsequently held "that a plea agreement that waives the right to file a federal habeas petition pursuant to 28 U.S.C. § 2254 is unenforceable with respect to an [ineffective assistance of counsel] claim that challenges the voluntariness of the waiver."  *Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005).

Indeed, a "'decision to enter into a plea agreement cannot be knowing and voluntary when the plea agreement itself is the result of advice outside the range of competence[.]'" *United States v. Ruiz*, 241 F.3d 1157, 1165 (9th Cir. 2001), *reversed on other grounds, quoting DeRoo v. United States*, 223 F.3d 919, 923-24 (8th Cir. 2000).  The Court finds Terry has not waived the right to assert counsel was ineffective in advising him regarding the plea agreement, which may include some conduct leading up to the guilty plea because it may affect the advice of counsel.

### THE MERITS

In his §2255 motion, Defendant raises three grounds for relief.  First, Defendant alleges four instances of ineffective assistance of counsel.  (CV 1-1 at 9-16).  Second, Defendant alleges three instances of prosecutorial misconduct.  (*Id*. at 17-21).  Third, Defendant alleges that there is newly discovered evidence in the form of statements made by a co-defendant that demonstrates his actual innocence.  (*Id*. at 22-26).

## I.   Ineffective Assistance of Counsel

### A.  Plea Colloquy

A claim for ineffective assistance of counsel ("IAC") may be brought in a collateral proceeding under § 2255.  *Massaro v. United States*, 538 U.S. 500, 504 (2003). In *Carrera v. Ayers*, the Ninth Circuit reiterated the standard that a defendant must satisfy in order to succeed on an ineffective assistance of counsel claim.  670 F.3d 938 (9th Cir. 2011).  It instructed:

> To establish ineffective assistance of counsel, a defendant must prove: (1) deficient performance—that is, his counsel's performance fell below an objective standard of reasonableness, and (2) prejudice—that is, a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

1

2  *Id.* at 942-43 (citations and quotation marks omitted).  This test applies to challenges to

3  guilty pleas based on ineffective assistance of counsel claims.  *Hill v. Lockhart*, 474 U.S.

4  52, 58 (1985).  It is the movant's burden to establish both prongs of the *Strickland* test.

5  *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995).  "If [a court]

6  conclude[s] that the petitioner fails to satisfy [either] of the *Strickland* prongs, [it] need not

7  address the other.  *Stanley v. Schriro*, 598 F.3d 612, 619 (9th Cir. 2010) (citing *Strickland*

8  *v. Washington*, 466 U.S. 668, 697 (1984)).

9         In cases where a movant has entered into a plea agreement, he can only challenge

10  that any alleged deficient performance caused him to not fully understand his plea

11  agreement and/or affected their voluntariness to enter into the plea agreement.  *See Hill v.*

12  *Lockhart*, 474 U.S. 52, 56 (1985); *United States v. Jeronimo*, 398 F.3d 1149 (9th Cir.

13  2005). Put another way, to prevail, the movant must show that "(1) counsel's representation

14  fell below the range of competence demanded of attorneys in criminal cases, and (2) there

15  is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty

16  and would have insisted on going to trial."  *Washington v. Lampert*, 422 F.3d 864, 873 (9th

17  Cir. 2005) (quotation marks and citation omitted).

18         When the record shows that a plea colloquy was conducted in accordance with Rule

19  11 of the Federal Rules of Criminal Procedure, namely, where the court explains the

20  charges and addresses the defendant directly, there is sufficient evidence to find that the

21  plea was made knowingly and voluntarily.  *See United States v. Michlin*, 34 F.3d 896, 898-

22  99 (9th Cir. 1994); *Gonzalez-Loera v. United States*, No. CV 18-00727-PHX-SPL (CDB),

23  2019 WL 2110779, at *8 (D. Ariz. Mar. 26, 2019).  A court may also find that a "[movant's]

24  statements at [his] plea colloquy carry a strong presumption of truth." *Muth v. Fondren*,

25  676 F.3d 815, 821 (9th Cir. 2012).  Indeed, the Ninth Circuit has stated that it agrees with

26  the principle that, absent "extraordinary circumstances, allegations in a § 2255 motion that

27  directly contradict the petitioner's sworn statements made during a properly conducted

28  Rule 11 colloquy are always palpably incredible and patently frivolous or false." *Id.*, *citing*

1    *United States v. Lemaster*, 403 F.3d 216, 220–21 (4th Cir.2005).

2         Here, Defendant alleges that he suffered ineffective assistance of counsel on several

3    instances; however, Defendant fails to contend that he did not understand the plea

4    agreement or that his plea was involuntary.  To the contrary, not only was Defendant's plea

5    colloquy conducted according to Rule 11, which establishes a facial showing of his

6    understanding and voluntariness, but hearing transcripts also demonstrate that the Court

7    extensively reviewed his plea agreement; asking Defendant whether he understood what

8    he was pleading guilty to and whether he was doing so voluntarily, on multiple occasions,

9    to which the Defendant answered affirmatively.  (*See generally* CR 300).  The Court also

10    asked Defendant whether his attorney went over the plea agreement with him and whether

11    he was satisfied with his attorney's service, to which the Defendant answered in the

12    affirmative.  (CR 355 at 2:21-3:9).  The record clearly demonstrates that Defendant

13    understood his plea agreement and that he knowingly, intelligently, and voluntarily pleaded

14    guilty.  The magistrate judge made such a determination at Defendant's change of plea

15    hearing (CR 300 at 23:7-13) and, during the sentencing proceeding, this Court also found

16    that "each plea of guilty was knowingly, intelligently, and voluntarily made." (CR 355 at

17    3:18-20).  Additionally, Defendant has not presented or shown in this proceeding any basis

18    for the Court to conclude his guilty plea was not knowingly, intelligently, and voluntarily

19    entered.

20    **B.    Failure to Communicate, Investigate, Prepare and Interview Witness**

21         Defendant asserts counsel was ineffective for failing to interview and/or subpoena

22    a witness.  The Court will refer to this witness as S.P.

23         Actions of a defense attorney, which appear to be trial tactics, will not support an

24    allegation of ineffective assistance of counsel.  *State v. Espinoza-Gamez*, 139 Ariz. 415,

25    417, 678 P.2d 1379, 1381 (1984).  Any issues of "trial strategy and tactics are committed

26    to defense counsel's judgment, and claims of ineffective assistance cannot be predicated

27    thereon."  *State v. Beaty*, 158 Ariz. 232, 250, 762 P.2d 519, 537 (1988), quoting *State v.

28    Vickers*, 129 Ariz. 506, 633 P.2d 315, 323 (1981).  "The object of an ineffectiveness claim

     is not to grade counsel's performance."  *Beaty*, 158 Ariz. at 249, 762 P.2d at 536.  Courts

presume that counsel's conduct is trial strategy.  *State v. Fisher* 152 Ariz. 116, 118, 730 P.2d 825, 827 (1986).   Disagreements in trial tactics will not support a claim of ineffectiveness assistance of counsel provided the conduct has some reasoned basis.  *State v. Lee*, 152 Ariz. 210, 214, 689 P.2d 153, 157 (1984).

Courts afford deference to trial counsel's tactical decisions if there is evidence the attorney performed an adequate investigation in support of those judgments.  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  The Supreme Court has stated:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment.

*Strickland*, 466 U.S. at 690-91, 104 S.Ct. at 2066.  To assess counsel's investigation, it is necessary to conduct an objective review of the attorney's performance, measured for "reasonableness under prevailing professional norms," including consideration of the context as seen "from counsel's perspective at the time."  *Wiggins*, 539 U.S. at 522, 123 S.Ct. at 2536, quoting *Strickland*, 466 U.S. at 688-89, 104 S.Ct. 2052.

Here, the witness Defendant asserts counsel should have interviewed is the named victim in the Phoenix case.  While a defendant has a right to attempt to interview a witness, a witness has a right to refuse to be interviewed.  *Byrnes v. United States*, 327 F.2d 825, 832 (9th Cir. 1964); *see also United States v. Black*, 767 F.2d 1334, 1338 (9th Cir. 1985) ("a defendant's right of access to a witness 'exists co-equally with the witnesses' right to refuse to say anything'").  Indeed, the factual statement in the plea agreement indicates Defendant recruited and trained S.P. to engage in commercial sexual activity and

1   Defendant was given the money S.P. earned from acts of prostitution.[3]  Plea Agreement

2   (CR 282, pp. 9-10).  Additionally, the government asserts the "issue of victim participation

3   in the Phoenix case was carefully analyzed and considered by the both parties during plea

4   negotiations and prior to Defendant's decision to accept the plea agreement. Response

5   (Doc. 10, p. 8); Defendant does not dispute this assertion in his Reply.  Defendant has

6   shown no basis to conclude S.P. would have agreed to an interview or that the Court would

7   have ordered a deposition of S.P.  Further, in light of the factual basis, the Court finds

8   Defendant has not been prejudiced by counsel's failure to interview this witness.

9          Defendant does not show that trial counsel's representation fell below an objective

10  standard of reasonableness.  Rather, counsel could have sought an interview with S.P.,

11  which likely would have been refused.  This may have resulted in a less favorable plea

12  offer.  The Court presumes counsel's conduct was a tactical decision and finds it was

13  reasonable under prevailing professional norms.  The Court finds counsel's purported

14  ineffective "'performance [did not affect] the outcome of the plea process . . . [such] that

15  absent the erroneous advice, [Defendant] would have insisted on going to trial.'"

16  *Baramdyka*, 95 F.3d at 844, *citation omitted; see also Hill*, 474 U.S. at 58; *Doganiere v.*

17  *United States*, 914 F.2d 165, 168 (9th Cir.1990).  The Court finds it has been conclusively

18  established that Defendant's allegations that counsel did not interview a witness such that

19  it would have affected the plea outcome are not credible.  Therefore, an evidentiary hearing

20  is not needed as to this issue.  *Watts*, 841 F.2d at 277.

21         Similarly, to the extent Defendant alleges counsel failed to communicate,

22  investigate, and prepare for other reasons, Defendant stated during the plea colloquy that

23  he was satisfied with the services of his attorney and that the attorney had been able to

24  answer any questions Defendant may have had.  His assertion, for example, that counsel

25  did not adequately communicate with him is clearly belied by the statements he made at

26  the plea colloquy.  Additionally, Defendant has failed to provide any facts showing counsel

27  failed to investigate potential trial witnesses, other than S.P., or that they were unprepared.

28

---

[3] The Plea Agreement refers to S.P. as "Jane Doe."

1    The Court presumes counsel's conduct was a tactical decision and finds it was
2    reasonable under prevailing professional norms.  The Court finds counsel's purported
3    ineffective "'performance [did not affect] the outcome of the plea process . . . [such] that
4    absent the erroneous advice, [Defendant] would have insisted on going to trial.'"
5    *Baramdyka*, 95 F.3d at 844. The Court finds it has been conclusively established that
6    Defendant's allegations that counsel did not adequately communicate, investigate and
7    prepare such that it would have affected the plea outcome are not credible.  Therefore, an
8    evidentiary hearing is not needed as to these issues.  *Watts*, 841 F.2d at 277.

9    **C.  Failure to File Pretrial Motions**

10    Defendant appears to be asserting that his decision to enter into a plea agreement
11    was not knowing and voluntary because counsel failed to file pretrial motions.  However,
12    Defendant's claim which alleges that his counsel failed to file certain pretrial motions,
13    namely certain discovery requests, is moot because Defendant admits that he and his newly
14    appointed attorney did in fact receive the requested document.  (*See* CV 11 at 2).
15    Additionally, as Defendant received the document, he cannot show he has been prejudiced
16    by counsel's alleged deficient conduct.  Additionally, this allegation as a separate claim
17    independent of the effectiveness of counsel during plea proceeding is procedurally barred
18    because the alleged failing occurred prior to Defendant pleading guilty.  *See Rishor v.*
19    *Ferguson*, 822 F.3d 482, 499 (9th Cir. 2016) (determining that the petitioner's collateral
20    attacks were procedurally barred after finding the petitioner had knowingly, intelligently,
21    and voluntarily plead guilty to the alleged crimes).  The Court finds it has been conclusively
22    established that Defendant's allegations that counsel did not adequately communicate,
23    investigate and prepare such that it would have affected the plea outcome are not credible.
24    Therefore, an evidentiary hearing is not needed as to these issues.  *Watts*, 841 F.2d at 277.

25    **D.    Failure to File Appeal**

26    Defendant also claims that defense counsel failed to file a notice of appeal for his
27    case.  However, while Defendant filed a notice of appeal in the Phoenix case, Defendant's
28    attorney did in fact file a timely notice of appeal in the Tucson case.  (*See* CR 343).  As

1   timely notices of appeal were filed, Defendant cannot show that he has been prejudiced by

2   the alleged deficient conduct.  Therefore, this is a frivolous claim.  *See United States v.*

3   *LeChabrier*, No. 2:08-cr-0427-MCE-EFB P, 2016 WL 7426117, at *14 (E.D. Cal. Dec. 22,

4   2016) (declining to grant an IAC claim when the record demonstrated that the movant's

5   appellate counsel filed a timely appeal in addition to the movant's pro se appeal).

6          **E.**     **Failure to File Motion to Withdraw from Plea Agreement**

7         Defendant alleges that his attorney failed to file a motion to withdraw from his plea

8   agreement.  Defendant's evidence is an email dated September 14, 2017, which was dated

9   fourteen days after Defendant signed his plea agreement and entered a guilty plea, stating

10  that he wished to speak with his attorney and potentially withdraw from his plea agreement

11  if a meeting did not occur.  (CV 11-3 at 2).  Defendant does not clarify whether this meeting

12  occurred or not.  Other than this exhibit, there is no evidence to show that Defendant's

13  counsel acted unreasonably by not filing a motion to withdraw from his plea agreement

14  prior to its acceptance before this Court accepted the guilty plea on September 17, 2017.

15  (CR 285).

16        Defendant also asserts he unambiguously requested his attorney file a motion to

17  withdraw the guilty plea in an email 15 days before sentencing.  Where a court has accepted

18  a plea, but sentencing has not yet occurred, a plea may be withdrawn for a "fair and just

19  reason."  Fed.R.Crim.P. 11(d)(1) and (2)(B).  The decision to allow withdrawal of a plea

20  under 11(d)(2)(B) is solely within the discretion of the district court.  *United States v.*

21  *Nostratis*, 321 F.3d 1206, 1208 (9th Cir.2003).  A defendant has the burden of showing a

22  fair and just reason for withdrawal.  *Id.*  The standard is applied liberally.  *United States v.*

23  *Jones*, 472 F.3d 1136 (9th Cir. 2007) (where defendant only offered his own inaccurate

24  interpretation of the law, court did not abuse discretion in denying motion to withdraw

25  plea).  Fair and just reasons include an inadequate Rule 11 plea colloquy, newly discovered

26  evidence, intervening circumstances, or other reasons that did not exist when the plea was

27  entered.  *United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005), *citing United States v.*

28  *Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir.2004).  A defendant's good faith change of

heart or unsupported protestations of innocence is not an adequate "fair and just reason." *See e.g., United States v. Rios-Ortiz*, 830 F.2d 1067, 1069 (9th Cir. 1987). Here, Defendant has not presented a fair and just reason that would have permitted withdrawal of the guilty plea. Moreover, at his sentencing the Court asked Defendant if he was satisfied with his counsel's service. As Defendant's response was, "Yes ma'am" to this question, the record clearly contradicts Defendant's claim that counsel was ineffective for failing to file the motion. (CR 355 RT. 2-3:21-25, 1-6).

Defendant has also failed to show that, even if his counsel had unreasonably failed to file a motion to withdraw from the plea agreement, he would probably not have pleaded guilty as the record shows that Defendant continually affirmed that he was guilty and read a letter to the Court apologizing for his conduct and asking for leniency. (CR 355, Tr. 24-27). At no time during the proceeding did Defendant object to entering the plea agreement or explain to the Court that his counsel had failed to file a motion to withdraw from the plea agreement. *Compare United States v. Villalobos*, 333 F.3d 1070 (9th Cir. 2003) (where defendant/petitioner objected to pleading guilty at his sentencing stating that he was not informed by the court or his attorney about the higher drug amount listed in his plea agreement but not mentioned at his plea colloquy, and that there was a valid IAC claim because the higher amount exposed him to higher sentencing which failed his understanding and altered his voluntariness pleading guilty).

The Court finds it has been conclusively established that Defendant's allegations that counsel failed to file a motion to withdraw from the plea agreement such that it would have affected the plea outcome are not credible. Therefore, an evidentiary hearing is not needed as to this issue. *Watts*, 841 F.2d at 277. Accordingly, the Court finds that Defendant has not suffered ineffective assistance of counsel for failing to file a motion to withdraw from his plea agreement.

## II.    Prosecutorial Misconduct

Defendant alleges prosecutorial misconduct including the failure to disclose requested materials and evidence and the failure to provide impeaching materials and

evidence regarding witness/victim S.C.  Defendant does not state these claims as a basis for ineffective assistance of counsel or the involuntariness of the guilty plea.  *See e.g. United States v. Delemus*, 828 F. App'x 380, 382 (9th Cir. 2020); *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995).  Therefore, Defendant's "valid guilty plea . . . renders irrelevant—and thereby prevents the defendant from [contesting]—the constitutionality of case-related government conduct that [took] place before the plea [was] entered."  *Class v. United States*, 138 S. Ct. 798, 805 (2018).  Moreover, Defendant has provided no basis to conclude the government did not provide all disclosure required under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), or the applicable rule.  Rather, Defendant is speculating such evidence exists, the evidence was in the possession/control of the government, and that evidence may be favorable to him.  This is insufficient to show a *Brady* violation. *Runningeagle v. Ryan*, 686 F.3d 758, 769 (9th Cir. 2012) (mere speculation is insufficient to state a Brady claim). Defendant has not demonstrated he is entitled to habeas relief as to these claims.

Defendant also asserts Trooper Duckett violated Defendant's constitutional rights.  However, a motion to suppress statements and evidence was litigated prior to the entry of the guilty plea.  (CR 248).  Further, Defendant does not state this claim as part of an ineffective assistance of counsel claim.  This claim, therefore, is prohibited on habeas review.  *See Kimmelman v. Morrison*, 477 U.S. 365, 377 (1986); *United States v. Madsen*, No. CR-06-42-E-BLW, 2009 WL 2245062, at *4 (D. Idaho July 23, 2009).

III.    **Newly Discovered Evidence and Actual Innocence**

Lastly, Defendant claims that several out-of-court statements made by the witness/victim and a co-defendant constitutes newly discovered evidence that shows his actual innocence.  "Short proof of actual innocence, claims solely based on new evidence are generally not cognizable on habeas."  *United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010).  A claim of newly discovered evidence to support a § 2255 petition must be based on an independent constitutional violation.  *Id.*, *citing Herrera v. Collins*, 506 U.S. 390, 400 ("[N]ewly discovered evidence . . . alleged in a habeas application . . . *must bear*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus.*"), *emphasis in original*.  A *Brady* violation involves a constitutional violation of due process, and therefore constitutes an "independent constitutional violation" that is cognizable under § 2255.  *See United States v. Bagley*, 473 U.S. 667, 675-76 (1985) ("The *Brady* rule is based on the requirement of due process.").

However, Defendant does not dispute that at least some of the "newly discovered evidence" was "derived from recordings, cellular telephone extractions, interviews and police reports generated during the investigation and provided to the defense."  Response (CR 10 at 16).  Additionally, to the extent Defendant refers to information obtained by a defense investigator, *see e.g.*, Petition (CV 1-1 at 20-21), there is no basis to conclude such evidence was obtained after the change of plea proceeding; i.e., this evidence is not newly discovered.  Additionally, the "newly discovered evidence" regarding post-sentencing communications constitutes potential impeaching evidence.

A mere "evidence-based claim," such as newly discovered impeaching evidence, that does not rise to the level of "an independent constitutional violation," "is not cognizable under § 2255."  *Berry,* 624 F.3d at 1038. Rather, the "proper device for such a claim is Federal Rule of Criminal Procedure 33, which allows a prisoner to move for a new trial based on newly discovered evidence." *Id.; see* Fed.R.Crim.P. 33(b)(1). Here, Defendant cannot prevail under either § 2255 or Rule 33.

None of the alleged newly discovered evidence supports "an independent constitutional violation."  Indeed, the evidence would merely impeach government witnesses, and such an "evidence-based claim," without more, is not cognizable under § 2255. *Berry*, 624 F.3d at 1038.  Further, Defendant cannot prevail under Rule 33 because Defendant's § 2255 Motion, even if construed as a Rule 33 Motion, is untimely.  The government has not waived a timeliness defense.

In fact, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent

- 17 -

constitutional violation occurring in the underlying state [or federal] criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). There is one exception to this rule, "where a defendant introduces affirmative proof of actual innocence based on newly discovered evidence." *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002). "[T]he threshold for [proving] a freestanding claim of innocence would have to be "extraordinarily high" and "truly persuasive." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (quoting *Herrera*, 506 U.S. at 417). Post-conviction evidence serving only to "undercut the evidence presented at trial" does not pass the threshold. *Id* at 477; *see also Spivey v. Rocha*, 194 F.3d 971, 979 (9th Cir. 1999) (habeas relief is unavailable where "the totality of the new evidence does not undermine the structure of the prosecution's case").

After reviewing the evidence submitted by the Defendant, this Court finds that the "newly discovered evidence" is not affirmative evidence that shows Defendant was actually innocent of the crimes he pled guilty to and thus fail to warrant habeas relief. *See, e.g., Carriger v. Stewart*, 132 F.3d 463, 477 (9th Cir. 1999) (Finding that the newly discovered evidence, although vastly undercutting the evidence presented at trial, failed because it was not affirmative evidence showing petitioner's actual innocence like something that showed the petitioner was elsewhere at the time of the murder (i.e. a hotel receipt that showed defendant was in another state when the murder occurred)).

## CERTIFICATE OF APPEALABILITY

Before Defendant can appeal the Court's judgment, a certificate of appealability ("COA") must issue.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1); Rule 11(a) of the Rules Governing Section 2255 Cases ("The district court must issue or deny a certification of appealability when it enters a final order adverse to the applicant.")  Under 28 U.S.C. § 2253(c)(2), a COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right."  The certificate must indicate which specific issue or issues satisfy this showing.  28 U.S.C. § 2253(c)(3).  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S.

473, 484 (2000).  For procedural rulings, a COA will issue only if reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right and the district court was correct in its procedural ruling.  *Id.*

Upon review of the record, and in light of the aforementioned standards, the Court concludes that a certificate shall not issue, as reasonable jurists could not debate whether the petition states a valid claim of the denial of a constitutional right and whether this Court was correct in its procedural ruling. Any future request for a COA must be addressed to the United States Court of Appeals for the Ninth Circuit.  *See* Fed. R. App. P. 22(b).

Accordingly, **IT IS ORDERED:**

1.  Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (CV 20-029, Doc. 1; CR 16-1350, Doc. 358) is DENIED.

2.  Case No. CV-20-029-TUC-CKJ is DISMISSED.

3.  A Certificate of Appealability shall not issue.

4.  The Clerk of the Court shall enter judgment and close this case.

Dated this 2nd day of September, 2021.

Honorable Cindy K. Jorgenson
United States District Judge

- 19 -