**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,  )  | |
| Plaintiff,  )  | No.  CR 16-1350-TUC-CKJ |
| vs.  )  | CR 16-1375-TUC-CKJ |
| Derek Lamont Terry,  )  | |
| Defendant.  )  | **ORDER** |

Pending before the Court are the Motion for Sentence Reduction (Docs. 393, 243) and a Supplement (Docs. 400, 250)[1] filed by Defendant Derek Lamont Terry ("Terry").  The government has filed a Response (Docs. 404, 254).[2]

*Background*

On August 31, 2017, Terry pleaded guilty to two counts of Transportation of Minor with Intent to Engage in Prostitution in CR 16-1350 and Sex Trafficking of Children in CR 16-1375. On February 23, 2018, Terry was sentenced to the custody of the Bureau of Prisons for a term of 240 months on Counts 1 and 2 in CR 16-1350 and a term of 240 months in CR 16-1375.  The sentences were ordered to be served concurrently and to be followed by a life term of supervised release in both cases.  Terry's consolidated appeal was dismissed.

---

[1]Movant has docketed the Supplement as Ex. C and the Court will refer to it such.

[2]Although the documents have been filed in both cases, the Court will refer only to the documents numbers in CR 16-1350 herein.

1    On February 25, 2022, Terry filed a Motion for Sentence Reduction (Doc. 393), as well

2    as his Exhibit C which consists of a statement by Terry (Doc. 400).  The government has filed

3    a response (Doc. 404).

4    According to the Bureau of Prisons website, Terry has a scheduled release date of

5    June 23, 2033.  As of the date of this Order, Terry has served approximately 1/3 of his

6    sentence.

7    Terry is 34 years old.  He asserts he has been diagnosed with "very painful chronic

8    osteomyelitis, neuralgia and neuritis from an severely infected dental extraction, Stage 2

9    kidney disease, and asthma, as well as intensified asthma symptoms."  Motion (Doc. 393, p.

10   3).  Further, Terry asserts his renal compromise is a result of the failure of BOP medical staff

11   to allow Terry to use opioid pain treatment as recommended by the treating doctor, and

12   instead was administered dangerously large doses of ibuprofen which damaged his kidney

13   function.  Additionally, Terry's supplement describes his medical conditions and the pain and

14   disabilities they cause.  Motion, Ex. C (Doc. 400).  The government asserts Terry's claims

15   as to his medical condition "are either not supported by the medical records or have not been

16   identified by the CDC as placing an individual at higher risk for severe illness if the

17   individual were to contract COVID-19."  Response (Doc. 404, p. 1).

18   Terry was offered the COVID-10 Moderna vaccine and educated on its benefits, but

19   refused the vaccine.  He states that it is his goal to get vaccinated, but that he wishes to make

20   an educated decision regarding it.  Motion, Ex. C (Doc. 400, p. 4).  Terry subsequently tested

21   positive for COVID-19 and recovered.

22

23   *First Step Act*

24   The First Step Act went into effect on December 21, 2018. See First Step Act of 2018,

25   Pub. L. No. 115-391, 132 Stat. 5194.  Prior to the passage of the First Step Act, only the

26   Director of the BOP could file a motion for compassionate release.  Section 603(b) of the

27   First Step Act modified 18 U.S.C. § 3582(c)(1)(A) with the intent of "increasing the use and

28

transparency of compassionate release."  Pub. L. No. 115-391, 132 Stat. 5194, at *5239 (capitalization omitted).  That section now provides that a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . " 18 U.S.C. § 3582(c)(1)(A).

The Act provides that a sentence may be reduced for "extraordinary and compelling reasons."  Additionally, district courts are granted broad discretion in determining whether to grant relief.  *US v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *4 (C.D. Cal. May 21, 2020), *citation omitted*.

*Exhaustion of Remedies*

The statute clearly imposes an administrative exhaustion requirement before seeking review by a district court.  *See e.g., United States v. Weidenhamer*, No. CR1601072001 PHXROS, 2019 WL 6050264, at *1 (D. Ariz. Nov. 8, 2019).  The parties agree the exhaustion requirement has been met in this case.  The Court finds, therefore, Terry has exhausted his administrative remedies.

*Request for Compassionate Release*

Terry asserts his medical conditions do rise to the level of a serious medical condition "that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover[.]"  Motion (Doc. 393, p. 8), *quoting* U.S.S.G. §1B1.13, n. 1.  He points to his tooth extraction that apparently was not entirely successful and the subsequent problems that arose thereafter including permanent nerve damage.  The attending doctor noted that "an opiate analgesic was indicated, but not permitted 'per facility choice.'"  Motion (Doc. 393, p. 8), *quoting* 3/2/2017 Florence Correctional Center Consultation Form, Motion, Ex. A (Doc. 393-1).

However, Terry's medical records indicate he was encouraged to use a low dose of ibuprofen for renal protection, and was offered different alternative medication. *See e.g.* 2/2/2019 BOP Health Services Clinical Encounter, Motion, Ex. B (Doc. 393, p. 1), Response, Ex. A (Doc. 404, p. 8). Although Terry disputes this, the Court finds there is no basis to conclude medical record made at the time includes false information. Indeed, Defendant concedes the doctors gave him numerous clear warnings about kidney disease. Additionally, Terry's prescription directs him to only take the ibuprofen as needed. Further, although the medical records support Terry's claim of kidney/renal issues, the medical records do not support a finding he has stage 2 kidney disease. *See e.g.*, Motion, Ex. B (Doc. 393-2, pp. 38, 39). Indeed, the records do not include any GFR test result of less than 60, which would indicate kidney disease. U.S. Dept. of Health and Human Services, National Institute of Diabetes and Digestive and Kidney Diseases, Chronic Kidney Disease, https://www.niddk.nih.gov/health-information/kidney-disease/chronic-kidney-disease-ckd/tests-diagnosis (last access July 25, 2022).[3] The Court finds Terry has not established he suffers from stage 2 kidney disease.

However, the Court recognizes that "chronic kidney disease of any stage can make you more likely to get very sick from COVID-19." CDC, COVID-19, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 25, 2022). Yet, the percentage of prisoners with kidney disease is less than that of the average American. *See* U.S. Dept. of Justice, Medical Problems Reported by Prisoners, https://bjs.ojp.gov/sites/g/files/xyckuh236/files/media/document/mprpspi16st.pdf (last accessed July 25, 2022) (4.8% of federal

---

[3] The Court finds it appropriate to take judicial notice of information provided on government websites. *See Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 727 (9th Cir. 2015), *citations omitted* (the Court may take judicial notice of "official information posted on a governmental website, the accuracy of which [is] undisputed"); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (the court can take judicial notice of "[p]ublic records and government documents available from reliable sources on the Internet," such as websites run by governmental agencies), *citations omitted*.

prisoners have kidney-related problems); CDC, Chronic Kidney Disease Initiative in the United States, 2021, https://www.cdc.gov/kidneydisease/publications-resources/ ckd-national-facts.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2 Fkidneydisease%2Fpublications-resources%2F2019-national-facts.html (last accessed July 25, 2022) (15% of U.S. adults are estimated to have chronic kidney disease). In other words, Terry's kidney problems are not extraordinary.

Terry also asserts he suffers from asthma. Indeed, he states he has dealt with "sever[e] persistent asthma, which . . . has left [him] at the mercy of an inhaler that often times gives [him] little help." Motion , Ex. C (Doc. 400, p. 1). However, the medical records do not support a conclusion that Terry suffers from moderate or severe asthma, which may raise the risk of serious illness or death upon a contraction of COVID-19. CDC, COVID-19, People with Moderate to Severe Asthma, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html nal failure  (last accessed July 25, 2022). Indeed, although Terry had reported a history of asthma, the medical records do not indicate a history of respiratory distress or any current asthma prescription. *See e.g.*, Motion, Ex. B (Doc. 243-2, p. 34).

Moreover, asthma in the prison system is not extraordinary. Approximately 16% of prisoners suffer from asthma. U.S. Dept. of Justice, Medical Problems Reported by Prisoners, https://bjs.ojp.gov/sites/g/files/xyckuh236/files/media/document/mprpspi16st.pdf (last access July 25, 2022). While higher than the 8.4% national average of adults, CDC, Most Recent National Asthma Data, https://www.cdc.gov/asthma/ most_recent_national_asthma_data.htm (last accessed July 25, 2022), the Court does not find a non-moderate to severe diagnosis of asthma to be extraordinary.

Additionally, Terry's osteomyelitis diagnosis does not support a basis for compassionate release as it does not raise the risk of severe illness or death upon a contraction of COVID-19. *See* People with Certain Medical Conditions, https://www.cdc. gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 25, 2022).

1       In his supplement, Terry also asserts he is obese, with a BMI of over 30. Motion, Ex.

2   C (Doc. 400). However, the medical records provided to the Court do not provide any

3   supporting documentation of this statement. Nonetheless, an individual with a BMI of 30

4   or higher is considered obese. CDC, Defining Adult Overweight & Obesity,

5   https://www.cdc.gov/obesity/basics/adult-defining.html (last access July 25, 2022). Obesity

6   may make Terry more susceptible to contracting COVID-19. See Center for Disease Control

7   and Prevention ("CDC"), Coronavirus, People with Certain Medical Conditions,

8   https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical

9   -conditions.html (last accessed July 26, 2022); CDC Updates, Expands List of People at Risk

10  of Severe COVID-19 illness, https://www.cdc.gov/media/releases/

11  2020/p0625-update-expands-covid-19.html (last accessed July 26, 2022).

12      However, obesity in the prison system is not uncommon. Indeed, a U.S. Department

13  of Justice Report indicates that a "majority of prisoners (74%) and jail inmates (62%) were

14  overweight, obese, or morbidly obese." Medical Problems of State and Federal Prisoners and

15  Jail Inmates, 2011-2012, NCJ 248491 (Revised Oct. 4, 2016),

16  https://www.google.com/url?client=internal-element-cse&cx=015849196504226064512:

17  8qeg8tt4g1g&q=https://bjs.ojp.gov/content/pub/pdf/mpsfpji1112.pdf&sa=U&ved=2ahU

18  KEwiE2JaL3-T4AhUCFVkFHfLnB6EQFnoECAMQAQ&usg=AOvVaw3MsNB8LOme

19  sRTVXpo-Gzbl (last accessed July 26, 2022); see also Medical Problems Reported by

20  Prisoners, NCJ 252644 (June 2021), https://bjs.ojp.gov/sites/g/files/xyckuh236/

21  files/media/document/mprpspi16st.pdf (last accessed July 26, 2022). In other words, Terry's

22  obesity is not extraordinary.

23      Further, the immunity provided by vaccination, while not complete, is high. CDC

24  Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity,

25  https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/vaccine-induced-

26  immunity.html (last accessed July 25, 2022); *see also* CDC Science Brief: Omicron

27  (B.1.1.529) Variant, https://www.cdc.gov/coronavirus/2019-ncov/science/

28

science-briefs/scientific-brief-omicron-variant.html (last accessed July 25, 2022).. Although Terry has refused the vaccination, the Court finds no basis to conclude the vaccine is not still available to him.  Moreover, Terry has not yet reached the age ranges with the highest contraction or death rates.   COVID-19 Deaths by Sex and Age, https://data.cdc.gov/widgets/9bhg-hcku?mobile_redirect=true (last accessed July 25, 2022). The Court considers that, while vaccination does not completely prevent the illness, the risk of long-term disability, or death, is a factor to consider whether extraordinary and compelling reasons for compassionate release have been shown.

Terry asserts his serious medical condition substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover.  U.S.S.G. § 1B1.13, n.1.  Specifically, his medical conditions impose a daily burden of pain and suffering on him, as well as disability in terms of daily activities such as eating, sleeping and other ordinary daily activities.  Further, he asserts the conditions cannot be adequately treated or managed within the BOP facilities.  Indeed, Terry points out that although the doctor recommended an opiate analgesic, such use is not permitted by the facility.  However, Terry has been using ibuprofen, as needed, and was offered alternatives to this course of treatment.  As Terry has the burden to establish compassionate release is warranted, the Court finds he has failed to show that the facility "is unable to monitor and adequately treat his medical conditions."  *United States v. Hernandez*, No. 118CR00152DADBAM, 2020 WL 5797896, at *6 (E.D. Cal. Sept. 29, 2020), *citing United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.").

Additionally, the Court considers that, at this time, there is only one confirmed inmate with COVID-19 at FCI Herlong, the facility in which Terry is housed.  Bureau of Prisons, COVID-19 Cases, Private Facilities, https://www.bop.gov/coronavirus/index.jsp (last

accessed July 25, 2022).[4]

A term of imprisonment may be modified after it has been imposed under 18 U.S.C. § 3582(c)(1)(A)(I) after a court considers "the factors set forth in section 3553(a) to the extent that they are applicable" if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(I). Such a reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*. However, the Ninth Circuit has held, that the Sentencing Commission's policy statement set forth at U.S.S.G. § 1B1.13 applies only to motions for a sentence reduction filed by the director of the Bureau of Prisons, and not to motions filed by or on behalf of defendants who have met the exhaustion requirement in § 3582(c)(1)(A). *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021). As the Sentencing Commission has not updated § 1B1.13 since § 3582(c)(1)(A) was amended to allow a defendant to file a motion after exhausting his administrative remedies, the Commission "has not yet issued a policy statement 'applicable' to" such motions. *Id*. at 802. Although the statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, "they are not binding." *Id*., *citing United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, "district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise." *Id*. at 801, *quoting United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020); *see, e.g., United States v. Brown*, No. 4:05-CR-00227-1, 411 F.Supp.3d 446, 449, 2019 WL 4942051, at *2 (S.D. Iowa Oct. 8, 2019); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019); *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019). While the Court is informed by this Policy, the Court recognizes the guidance by this Policy, however, is limited, because, by its terms "the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the

---

[4]Historically, this facility has had no inmate or staff deaths, 443 inmate recoveries, and 77 staff recoveries. BOP COVID-19 Cases, https://www.bop.gov/coronavirus/index.jsp (last accessed July 25, 2022).

1    statute and thus does not comply with the congressional mandate that the policy statement

2    must provide guidance on the *appropriate use* of sentence-modification provisions under §

3    3582." *Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019).

4          The Court recognizes that compassionate release takes "on added weight because of

5    the COVID-19 virus raging across the globe." *United States v. Esparza*, No.

6    1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) *Esparza*, 2020 WL

7    1696084 at *2.  However, as stated by government officials, "This is becoming a pandemic

8    of the unvaccinated." https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/

9    16/press-briefing-by-white-house-covid-19-response-team-and-public-health- officials-45/

10   (last accessed July 25, 2022).  In fact, "[t]he good news is that if you are fully vaccinated, you

11   are protected against severe COVID, hospitalization, and death, and are even protected

12   against the known variants — including the Delta variant — circulating in the country." *Id.*;

13   *see also* https://www.whitehouse.gov/wp-content/uploads/2021/07/COVID-Press-Briefing_

14   16July2021_for-transcript.pdf (last accessed July 25, 2022); *see also* National COVID-19

15   Preparedness Plan, https://www.whitehouse.gov/covidplan/ (last accessed July 25, 2022).

16   As previously stated, there is no basis to conclude that Terry could not still receive the

17   vaccine.  Further, Terry has not shown that he is less likely to be re-infected with COVID-19

18   if released.

19         In light of the current conditions at FCI Herlong and Terry's medical condtion, the

20   Court, in its discretion, does not conclude that Terry's condition or current exposure to

21   COVID-19 presents "extraordinary and compelling reasons" to justify his release pursuant to 18

22   U.S.C. § 3582(c)(1)(A).  *See United States v. Cortez*, No. CR180085801PHXSPL, 2021 WL

23   689923, at *1 (D. Ariz. Feb. 23, 2021) (collecting cases).

24         Even considering the non-binding Policy statement of the Sentencing Commission,

25   Terry's health, in addition to the risk of COVID-19, does not constitute extraordinary and

26   compelling reasons for compassionate release.  The applicable Application Note provides

27   extraordinary and compelling reasons may be shown where "(ii) the defendant is – (I)

28

1   suffering from a serious physical or medical condition . . . that substantially diminishes the

2   ability of the defendant to provide self-care within the environment of a correctional facility

3   and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, App. Note 1(A).

4   Terry has only served approximately 1/3 of his sentence and has not adequately shown a

5   serious condition that substantially diminishes his ability to provide self-care.  Indeed, the

6   Court finds Terry's medical conditions are not extraordinary.  The Court finds Terry has not

7   shown reasons, or a combination of reasons, that are extraordinary and compelling reasons

8   warranting compassionate release.

9          In sum, Terry's medical condition and the speculative possibility of again contracting

10  COVID-19 is not an extraordinary and compelling reason to release him now, particularly

11  considering BOP's efforts to contain the spread of COVID-19 in its facilities and privately-

12  contracted facilities.  Nor has Terry provided any evidence that he will be less likely to

13  contract COVID-19 if released.  Terry's circumstances are, in the present pandemic/endemic,[5]

14  far closer to ordinary than "extraordinary."

15

16  *18 U.S.C. § 3553(a)*

17         Even if the Court found that extraordinary and compelling reasons had been

18  demonstrated by Terry, the Court would also need to consider the § 3553(a) factors before

19  determining whether compassionate release is appropriate.  Indeed, the requirement that the

20  reduction is consistent with Sentencing Commission policy focuses on community safety.

21  The Guidelines provide that compassionate release is appropriate only where the "defendant

22  is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

23  Factors to consider include the nature of the offense, the history and characteristics of the

24  defendant, and the nature and seriousness of the danger to any person or community posed

25  by a defendant. *Id*.; *see also* 18 U.S.C. § 3142(g) factors.

26

27
          [5] Is Covid-19 endemic yet? Experts aren't so sure, https://edition.cnn.com/2022/04/13/
28  world/coronavirus-newsletter-intl-13-04-22/index.html (last accessed July 25, 2022).

Terry's criminal history includes a felony assault, possession of a dangerous weapon, and probationary reports of noncompliance.  Further, the pre-sentence report for the offenses in the current cases indicate Terry showed a disregard for the well-being and exploitation of the minor victims.   Although Terry points out positive and mitigating reasons support compassionate release, *see* Motion, Ex. C (Doc. 400, pp. 5-8) (e.g., sobriety, educational progress, eagerness to be present for children), the Court must consider the risk to the community.  During the sentencing hearing, this Court stated:

> And further, I'm concerned about protecting the community. I'm concerned, given your other criminal history, given how pervasive this was, how you were clearly the leader. Nobody was telling you what to do. You were telling everybody what to do so you could engage in this business enterprise and make as much money as possible. So I'm concerned that this sentence needs to also protect the community from your activities.

Feb. 27, 2018 Sent. Transcript (Doc. 355, p. 39).  The Court finds there is an insufficient basis to conclude Terry would not continue to be a threat to the community if he was granted release at this time.

Terry was sentenced to 240 concurrent months in the custody of the Bureau of Prisons, with a lifetime term of supervision to follow.  This was close to the low end of the Sentencing Guideline range of 235 months to 293 months.   While Terry's sentence adequately reflected the seriousness of the offense, promoted respect for the law, provided a just punishment for the offense, and provided an adequate deterrence to criminal conduct, a reduction of the sentence would not further these goals.  The Court also considers that a reduced sentence would result in sentence disparities among defendants with similar records who have been found guilty of similar conduct.

*Conclusion*

In its discretion, the Court declines to find compassionate release is warranted in this case.  *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (holding district court did not abuse its discretion by denying compassionate release despite defendant's eligibility for that relief).

1    Accordingly, IT IS ORDERED:

2    1.       The Motions for Sentence Reduction (Docs. 393, 243) are DENIED.

3    2.       The Clerk of Court shall mail a copy of this order to Terry at:

4                     Derek Lamont Terry No. 61564-408
                      FCI Herlong
5                     P.O. Box 800
                      Herlong, CA  96113
6
     DATED this 1st day of August, 2022.
7

8

9                                _____
                                     Cindy K. Jorgenson
10                                  United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28